(96 App. Div. 370.)

ANDERSON v. ABEEL.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. PROCESS—MODE AND SUFFICIENCY OF SERVICE.

On motion for the vacation of a judgment for non-service of summons, it appeared that the alleged service was had while defendant was in the custody of two police officers, being taken through a dense crowd anxious to speak with him; that one of defendant's hands was handcuffed; that he carried a grip in the other hand; that the process server pressed through the crowd, inquired for defendant, and, upon being told that the prisoner was he, started towards him, both the defendant and the officers thinking that he intended to assault defendant, so that one officer pushed him back. Defendant testified that he did not hear anything said, and that, though he noticed that a paper was dropped, he did not know what it was; and the affidavit of the officer stated that the process server, on learning who defendant was, stated that he was a deputy sheriff, but that he did not hear him say anything further. The summons was in fact dropped on the floor and picked up by one of the officers, who put it in defendant's overcoat pocket, where it remained until defendant was taken to the station, but it did not appear that defendant ever saw it. The affidavit of the process server stated that he told defendant that the paper was a summons, and held it near defendant's hands, where he could take it, and that he slipped the paper between the lapels of the defendant's outer and under coat, but did not deny that there was a large crowd attempting to get near defendant, or that his effort was forcibly repulsed by the officer. *Held*, that there was no service within Code Civ. Proc. § 426, providing that personal service must be made by delivering a copy of the summons to the defendant in person.

O'Brien, J., dissenting.

Appeal from Special Term, New York County.

Action by Eleanor L. Anderson against James N. Abeel. Plaintiff had judgment by default, and, from an order denying a motion to vacate the judgment for nonservice of the summons, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

Jesse Stearns, for appellant.
William D. Sperberg, for respondent.

HATCH, J. It appears by. the moving papers that the plaintiff has obtained a judgment against the defendant by default for $75,-052.40, based upon a complaint for breach of a contract to marry. In support of the motion to vacate and set aside the service of the summons, it is made to appear that a few days prior to the 5th day. of February, 1904, the defendant was taken under extradition· proceedings from the Dominion of Canada to the city of Buffalo. Arriving at this place, he was delivered to Michael W. Collins, a detective sergeant of the police force of the city of New York, who held a bench warrant against him, issued upon an indictment for forgery. Collins immediately proceeded with the defendant over the New York Central Railroad to the city of New York, where they arrived upon the evening of the same day. Prior to removing the defendant from the train at the Grand Central Station, Collins placed a handcuff upon the de-

fendant's right hand, and also took hold of defendant's right arm. The latter had a hand bag which he carried in his left hand. As they walked through the station they were met by First Detective Sergeant Vallely, who thereafter accompanied them, walking close to defendant's left side. As they proceeded, they were met by several newspaper reporters and a large crowd of people. As the detectives hurried the defendant along, a man broke through the crowd and asked "if the defendant was Abeel," and was informed that he was. Defendant testified that thereupon a man sprang in front of Detective Vallely and thrust some paper towards him; whether it touched him or not, he could not say; that the paper fell immediately to the floor, and deponent did not see it afterwards; that the party who thrust the paper towards him said nothing which he could hear, and gave him no information as to the contents of the paper, or as to what it was; that he did not know of his own knowledge at any time what the paper contained; that when the man thrust the paper towards him he thought he was about to be assaulted; and that Detective Vallely pushed the person away, and he immediately disappeared from defendant's view. Vallely testified to meeting Collins and the defendant at the station; that defendant had a handcuff on his right hand, and Collins had hold of his right arm or hand; that he took a position on his left side, and walked as rapidly as possible for a street car; that there was a large number of people present, who crowded around the party and accompanied them through the station, striving to get an opportunity to converse with the defendant; that as they were walking in this manner a man suddenly broke through the crowd, thrust his hand in front of deponent, and in the direction of Abeel; "that deponent thought at the time that an assault was being made upon Abeel, and immediately pushed the party violently away; that as he did so he saw a paper fall between deponent and said Abeel; whether the said paper touched the person of said Abeel he does not know, but thinks not; that deponent picked up the paper, and put it in the outside pocket of Abeel's overcoat; that this deponent did not know what the paper contained, and did not inform Abeel that he had put the paper in his pocket, and, as far as this deponent knows, Abeel was not informed that the paper was put in his pocket; that the person who thrust his hand in the direction of Abeel said, 'Is this Abeel?' deponent said 'yes,' and he said, 'I am a deputy sheriff,' and deponent heard him say nothing further, and knows that if he spoke anything loud enough for Abeel to have heard him this deponent certainly would have heard him; that this deponent did not see the person who thrust his hand toward Abeel as aforesaid again." Vallely further testified that they proceeded to the Mulberry Street Station, and immediately thereafter he was called upon by John M. Parker, Jesse Stearns, and M. S. Lynch, and that Parker asked deponent about the paper which he picked up at the railroad station. Deponent replied "that he did not know what the paper was, but that he (deponent) had put it in Abeel's overcoat pocket, and on request by the said Parker deponent produced the overcoat, and the said Parker took a paper from one of the pockets of the said coat; deponent did not learn what the paper was, or its contents, and, so

far as deponent knows, the said Abeel was not advised as to what the paper was, or what its contents were; that the last deponent saw of the paper was in the hands of John M. Parker at the said Mulberry Street Station." As to what occurred at the time of the attempted service, this affiant was corroborated by the affidavit of Collins, and also by the affidavits of Parker, Lynch, and Stearns. As to what transpired at the Mulberry Street Station, the three last-named affiants corroborate in detail the statement made by Vallely, and the further statement by these witnesses is that Parker took and kept possession of the paper; that it purported to be a copy of a summons in an action brought in the New York Supreme Court, in which Eleanor Anderson was named as plaintiff against the defendant; that Parker did not deliver the paper to Abeel, nor inform him of its contents.

It is evident that this transaction did not constitute a good service of the summons. Section 426 of the Code of Civil Procedure provides that personal service of the summons upon a defendant must be made by delivering a copy thereof within the state to the defendant in person. Courts in construction of this provision have held that in some substantial form the party is to be apprised of the fact that service is intended to be made, and be informed generally of what is going on against him, that he may have knowledge and an opportunity to defend. Hiller v. B. & M. R. R. Co., 70 N. Y. 223. This must be done in an orderly manner. If the defendant seeks to avoid the service, the paper may be placed upon his person, or it may be dropped near to him and his attention called to the proceeding and the fact that service is intended. Wright v. Bennett, 30 Abb. N. C. 65, note. In some form these acts must be done in order to effect a good service. Beekman v. Cutler, 2 Code Rep. 51; Correll v. Granget, 12 Misc. Rep. 209, 34 N. Y. Supp. 25. A person may not assault another in order to effect service, and papers violently thrust upon the person, even though the act may convey some information to the party intended to be served, is not good service, and will be held void. Davison v. Baker, 24 How. Prac. 39. It is evident in this case that good service was not made. The defendant was handcuffed on one side to a detective, was carrying a bag in his other hand, and accompanied by a detective upon that side. He was physically unable to take the papers, had they been presented to him in the most orderly manner. The proofs submitted in the moving papers coming from disinterested persons show that the act of the process server amounted in substance to an assault. It is apparent that the defendant was incumbered by handcuff and bag; that he was being hustled along by the detectives; that reporters were making vigorous and persistent attempts to interview him, and a crowd of people was following and surrounding him. Under these circumstances it is evident that a plain statement was necessary in order to possess the defendant of knowledge of what the process server was trying to do, and it is clear that both in Abeel's mind, and in the minds of the detectives in whose custody he was, an attempt was made to assault him when the process server burst through the crowd. The act of the process server, and the immediate resistance by the custodian of the defendant, speak with more force than words of the character of the act

and the impression produced, and it convinces us that the transaction assumed the appearance of an attempted assault rather than the orderly service of a paper. It is clear beyond controversy that Abeel did not know at that time, nor for some time after, that any service had been made or attempted to be made upon him, and only had knowledge of what the whole transaction meant by what he was subsequently informed.

In answer to this case, the respondent submits three affidavits of the process server, in one of which he makes the formal statutory proof required, and in the other two he gives his version of how the service was effected. He corroborates the statements respecting the custody of the defendant by the detectives at the time he met them, and further says that when he met the trio he "asked the defendant herein if he were James Abeel, whereupon defendant herein made no reply and drew back, and Detective Vallely said, 'Yes, this is Abeel.' Immediately whereupon your deponent said, 'I have a Supreme Court summons for you,' at the same time looking down towards the defendant's hands, and holding the copy of the summons opposite where the hands of the said Abeel were hanging, so as to allow the defendant herein to take same. The defendant did not take the said paper as it was held out to him, and thereupon your deponent placed the said copy of the summons, without force or violence of any kind whatever, upon the defendant's person, slipping it between the lapels of his outer and under coat. Thereupon Abeel again moved forward, and as he did so the said copy of the summons fell to the ground, and the same was picked up by Sergeant Detective Vallely, who, after looking at the same, took it up and put it into the defendant's pocket." The second affidavit does not add anything to this. The statement contained in this affidavit—and it was evidently so intended—conveys the impression that Abeel's hands were hanging down unincumbered, and that he might have taken the summons. Such condition is overwhelmingly disproved. With the handcuff upon one side, held by an officer, and the bag upon the other side, with his person guarded by an officer, makes it plainly evident that he could not physically have taken the paper, at least without difficulty. The affidavit of the process server reads as though there were no surrounding conditions which prevented him from stopping the procession and effecting the service in the most orderly manner. That there was a large crowd, newspaper reporters and others, striving to get near the defendant, the process server does not deny; that his action was forcibly repulsed by the detective who thrust him back remains uncontradicted; and Parker states in his affidavit that when he was so thrown back he said, "It is all right, I touched his person." Evidently that was what he accomplished, and all that he accomplished, as the defendant was hurried through the crowd. Manifestly this is not such service as the law contemplates, and, however reprehensible Abeel's action may have been in other respects, it does not deprive him of his legal rights, and those rights entitle him to be properly served with process in order to authorize the enforcement of a claim against him. The overwhelming proof in this case shows that that has not yet been done, for which

89 N.Y.S.—17

reason the order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur, except O'BRIEN, J., who dissents.